CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 17 2016

JULIA A DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, as subrogee of Hillel at Virginia Tech, Inc., <br><br> Plaintiff, <br><br> v. <br><br> STRUCTURES DESIGN/BUILD, LLC, <br><br> Defendant/Cross-Claimant, <br><br> v. <br><br> PJ LITTLE PLUMBING, INC., <br><br> Defendant/Cross-Claim Defendant/ Third-Party Plaintiff, <br><br> v. <br><br> CMC SUPPLY, INC., <br><br> Third-Party Defendant/Fourth-Party Plaintiff, <br><br> v. <br><br> HARRY S. EKLOF, JR. & ASSOCIATES, INC., <br><br> Fourth-Party Defendant. | Civil Action No. 7:15-CV-00354 <br><br><br> **MEMORANDUM OPINION** <br><br> By: Hon. Glen E. Conrad <br> Chief United States District Judge |

Plaintiff Allstate Insurance Company ("Allstate"), as subrogee of Hillel at Virginia Tech, Inc. ("Hillel"), brings this diversity action against defendants Structures Design/Build, LLC ("Structures") and PJ Little Plumbing, Inc. ("PJ Little"), alleging breach of warranty, negligence, and contractual indemnity. The case is presently before the court on PJ Little's motion to dismiss the complaint and third-party defendant CMC Supply, Inc.'s ("CMC Supply") motion to dismiss

PJ Little's third-party complaint. For the reasons set forth below, PJ Little's motion will be granted in part and denied in part, and CMC Supply's motion will be granted.

## Background

The following facts, taken from Allstate's complaint and PJ Little's third-party complaint, are accepted as true for purposes of the motions to dismiss. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

Allstate is an Illinois corporation and subrogee of Hillel. Structures is a Virginia limited liability company engaged in the business of designing and constructing buildings. PJ Little is a Virginia corporation engaged in the business of plumbing.

At all times material herein, Hillel owned and operated the Rosenberg Hillel Center for Jewish Life at 710 Toms Creek Road in Blacksburg, Virginia (the "Property"). Allstate provided insurance coverage to Hillel for the Property. On or about March 22, 2011, Hillel contracted with Structures for the design and construction of the Property. Structures then subcontracted with PJ Little for plumbing and "mechanical installation work" on the Property. Compl. ¶ 9. This work included the installation of a "CVPC to brass connector" that attached to the piping of a hot water storage tank. Id. ¶ 10.

A certificate of occupancy was issued for the Property on January 23, 2013. On or about June 17, 2013, the connector failed, resulting in significant water damage to the Property itself and to the insured personal property stored inside the Property. According to the complaint, the connector used in the installation was improper because the plumbing system produced temperatures in excess of what the connector was able to handle. Pursuant to the insurance policy on the Property, Allstate made payments to Hillel in the amount of $183,261.97.

2

On June 26, 2015, Allstate, as subrogee of Hillel, filed a complaint against Structures and PJ Little, alleging various state law claims. In Count I, Allstate alleges that Structures breached its express warranty that the building would be "free from defects for a period of one year from substantial completion." Id. ¶ 17. In Count II, Allstate contends that Structures was negligent in, inter alia, designing the hot water system and instructing PJ Little as to the installation of the connector. In Count III, Allstate seeks contractual indemnification from Structures, pursuant to § 8.5 of the contract between Hillel and Structures that specifies that Structures will indemnify Hillel for any negligence or omissions by any of its subcontractors. In Count IV, Allstate alleges that PJ Little was negligent in failing to properly install the hot water system. In Count V, Allstate alleges that PJ Little breached its implied warranty to perform its services in a good, safe, and workmanlike manner, free of defects. Allstate seeks damages in the amount of $183,261.97.

On August 13, 2015, Structures filed cross-claims against PJ Little for breach of warranty, contractual indemnification, and equitable indemnification. Structures argues that PJ Little was solely responsible for selecting the materials used in the installation of the hot water system and for installing the connector. In the event that Allstate is entitled to relief from Structures, Structures believes that it is entitled to indemnification from PJ Little.

On September 15, 2015, PJ Little filed a third-party complaint against CMC Supply. CMC Supply is a Virginia corporation engaged in the business of selling plumbing, electrical, and building supplies. On August 21, 2012, CMC Supply sold to PJ Little, inter alia, the connector that PJ Little then installed into the hot water system. According to the third-party complaint, the connector was defective, and that defect caused the connector to fail and damage the Property. PJ Little asserts that a conforming connector would not have failed under the same

3

circumstances. As such, PJ Little asserts a claim of breach of implied warranty of merchantability against CMC Supply and seeks direct, incidental, and consequential damages, as well as any other appropriate relief.

On November 18, 2015, PJ Little moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules for Civil Procedure. On December 7, 2015, CMC Supply moved to dismiss PJ Little's third-party complaint pursuant to Rule 12(b)(6). The court held a hearing on both motions on March 2, 2016. The motions have been fully briefed and are ripe for disposition.

## Standards of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move for dismissal of an action for failure to state a claim upon which relief can be granted. To survive such a motion, a plaintiff must establish "facial plausibility" by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). All well-pleaded allegations in the complaint are taken as true and all reasonable factual inferences are drawn in the plaintiff's favor. Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999). However, "[a]t bottom, a plaintiff must 'nudge [her] claims across the line from conceivable to plausible' to resist dismissal." Wag More Dogs, LLC v. Cozart, 680 F.3d 359, 364-65 (4th Cir. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Moreover, the complaint must contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 555, 570. Although a complaint need not contain detailed factual allegations, it must contain more than "labels and conclusions" and "a formulaic recitation of the elements of a cause of action will not do." Id. at 555. In considering a

Rule 12(b)(6) motion, the court may consider exhibits attached to or referred to in the complaint. See Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999).

## Discussion

### I. PJ Little's Motion to Dismiss

In its motion, PJ Little argues that the court should dismiss Allstate's claims against it for two reasons: (1) the negligence claim in Count IV is barred by the economic loss rule, and (2) PJ Little did not owe any contractual duty to Allstate or Hillel that could give rise to an alleged warranty. The court will consider each argument in turn.

#### a. Count IV: Negligence

In Count IV of the complaint, Allstate alleges that PJ Little negligently installed the hot water system. In its motion to dismiss, PJ Little argues that this negligence claim should be dismissed because Allstate cannot recover such economic losses in a tort action.

"Virginia's economic loss rule 'is intended to preserve the bedrock principle that contract damages be limited to those within the contemplation and control of the parties in framing their agreement.'" Cty. of Grayson v. RA-Tech Servs., Inc., No. 7:13CV00384, 2013 WL 6002348, at *3 (W.D. Va. Nov. 12, 2013) (quoting City of Richmond v. Madison Mgmt. Group, 918 F.2d 438, 446 (4th Cir. 1990) (internal citation and quotation marks omitted)). The rule "prevents a plaintiff, whose only legitimate ground of complaint is that a contract has been breached, from collecting in a tort action both economic loss damages and damages generally cognizable in tort." City of Richmond, 918 F.2d at 446. In other words, "losses suffered as a result of the breach of a duty assumed only by agreement, rather than a duty imposed by law, remain the sole province of the law of contracts." Filak v. George, 594 S.E.2d 610, 618 (Va. 2004); see also City of Richmond, 918 F.2d at 466 ("[I]f, when the surface is scratched, it

5

appears that the defendant has breached a duty imposed by law, not by contract, the economic loss rule should not apply."). As such, in order to pursue a tort claim and a breach of contract claim concerning the same conduct, there must be an independent breach of a duty to "take care for the safety of the person or property of another." Blake Const. Co., Inc. v. Alley, 353 S.E.2d 724, 726 (Va. 1987); see also 77 Const. Co. v. UXB Int'l, Inc., No. 7:13CV00340, 2015 WL 1800353, at *3 (W.D. Va. Apr. 16, 2015) ("To avoid turning every breach of contract into a tort claim, the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract." (internal quotation marks omitted)). Moreover, when "a product 'injures itself' because one of its component parts is defective, a purely economic loss results to the owner for which no action in tort will lie." Sensenbrenner v. Rust, Orling & Neale, Architects, Inc., 375 S.E.2d 55, 57 (Va. 1988) (quoting East River S.S. Corp. v. Transamerica Delaval, 476 U.S. 858, 877 (1986)); see also Factory Mut. Ins. Co. v. DLR Contracting, Inc., No. Civ. A. 3:04CV834, 2005 WL 2704502, at *6 (E.D. Va. Oct. 20, 2005) ("[I]f the injury is only to the product or property itself that was the subject of contract, any loss or [diminution] in value is a matter of disappointed economic expectation ... for which relief lies in contract-not-tort-and thereby requires privity for pursuit of any claim." (internal quotation marks omitted)).

In the instant case, the court must determine whether Allstate's complaint asserts a claim for property damage, which would fall under tort law, or economic losses. Again, "[t]ort law is not designed ... to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement. That type of compensation necessitates an analysis of the damages which were within the contemplation of the parties when framing their agreement." Sensenbrenner, 374 S.E.2d at 58. "The controlling policy consideration underlying the law of

6

contracts is the protection of expectations bargained for." Id. As such, the court must first decide whether Allstate has sufficiently pled that PJ Little's breach involved duties outside ones assumed under the contract, and then whether the damages sought in the complaint include harm to property that was not subject to the agreement between the parties. See USAA Prop. & Cas. Ins. Co. v. Armstrong Air Conditioning, Inc., No. 221686, 2004 WL 2331290, at *1 (Va. Cir. Ct. Sept. 3, 2004) (finding that an oil burning furnace installed in an existing residence did not "injure itself ... but rather injured other property, not the subject of the oil burning furnace contract," after the home was destroyed by a fire allegedly caused by the defectively installed furnace).

The court finds Sensenbrenner to be instructive for making this determination. In that case, the homeowners entered into a contract with a building company for the design and construction of a new home, which included an enclosed swimming pool. 374 S.E.2d at 421. The building company then hired an architect to design the construction plans and a subcontractor to install the pool. Id. at 422. The homeowners alleged that, due to negligent design and construction, the pool caused water pipes to break, which then eroded and cracked the foundation of the house. Id. The Supreme Court of Virginia found that the homeowners alleged nothing more than "disappointed economic expectations." Id. at 425. The Court noted that the plaintiffs contracted for the purchase of a package, which included "land, design services, and construction of a dwelling." Id. The Court further provided that "[t]he package is alleged to have been defective" as "one or more of its component parts was sufficiently substandard as to cause damage to the other parts." Id. Therefore, the Court held that such damages were purely economic losses, for which the law of contracts provided the sole remedy. Id.

7

Here, the court first concludes that Allstate's factual allegations simply do not to show that PJ Little breached any duty imposed by law. Recovery in tort is only available when there is a breach of a duty to "take care for the safety of the person or property of another." Blake, 353 S.E.2d at 726. The complaint contains no allegations sufficient to demonstrate that PJ Little breached such duty. Filak, 267 Va. at 619 (noting that "whatever duties [the defendant] may have assumed arise solely from the parties' alleged contract"). Moreover, the court believes that the damages sought in the complaint are simply economic losses that are not recoverable through a tort claim. PJ Little argues that Count IV of Allstate's complaint alleges nothing more than disappointed economic expectations. The court is constrained to agree. According to the complaint, Hillel contracted with Structures for the construction of a new property. The court believes that the hot water system was a component of that package. Much the same as the plaintiffs in Sensenbrenner, Allstate, as subrogee of Hillel, alleges that the hot water system failed and damaged the other parts of the package, i.e., the Property itself. In other words, Allstate seeks recovery for damages to the Property, which was the subject of the contract between Hillel and Structures. See Sensenbrenner, 374 S.E.2d at 425 ("The effect of the failure of the substandard parts to meet the bargained-for level of quality was to cause a diminution in the value of the whole, measured by the cost of repair."). Finally, the court believes that the instant case is distinguishable from those cited by Allstate, as those cases involved contracts that covered the installation of equipment within an existing building. See AIU Ins. Co. v. Omega Flex, Inc., No. 3:11-cv-00023, 2011 WL 2295270, at *5 (W.D. Va. Jun. 9, 2011) ("Defendant in the instant case manufactured a product that was utilized during the renovation of a home."); see also Armstrong Air Conditioning, 2004 WL 2331290, at *1 ("[The plaintiffs] owned their home when a defectively manufactured or defectively installed oil burning furnace was sold and

installed by another defendant ... in their residence."). In such cases, it is clear that the contract between the parties did not encompass construction of the entire building itself, and, therefore, damages to the building were properly considered to be "property damages" outside the scope of the contract. Therefore, the court will grant PJ Little's motion to dismiss in part as to the damages to the Property itself but will deny the motion as to the damages to personal property stored inside the Property.[1] Accordingly, Count IV may only proceed as a negligence claim for damages to personal property.

### b. Count V: Breach of Warranty

In Count V of the complaint, Allstate alleges that PJ Little breached its express and implied warranties because it did not perform its services in a "good, safe, and workmanlike manner, free from defects and in accordance with all applicable codes and standards." Compl. ¶ 33. In its motion to dismiss, PJ Little argues that this claim should be dismissed because neither Hillel nor Allstate had a contract with it.

In Virginia, "[t]here can be no warranty unless the parties intended to warrant, that is to say, in the contract of warranty there must be an agreement of the minds of the contracting parties as in all other contracts[.]" Reese v. Bates, 26 S.E. 865, 868 (Va. 1897). There is no dispute that neither Hillel nor Allstate entered into a contract with PJ Little. However, "[a] person's right to sue as a third-party beneficiary of a contract is governed by [Virginia] Code § 55-22." Aetna Cas. & Sur. Co. v. Fireguard Corp., 455 S.E.2d 229, 231 (Va. 1995). That statute provides that "[i]f a covenant or promise be made for the benefit, in whole or in part, of a person

---

[1] When there is property damage and economic losses, the economic loss rule does not preclude recovery "if damages other than for economic losses are being sought, e.g., damage to property not subject of the contract." Factory Mut. Ins. Co., 2005 WL 2704502, at *6. Because the complaint alleges sufficient facts to show that the personal property located within the Property was not within the scope of the contract for the design and construction of the Property, it may be considered property damages to support an independent negligence claim against PJ Little. The court notes that, during the hearing on the motion to dismiss, PJ Little appeared to concede that such claim may go forward.

9

with whom it is not made ... such person, whether named in the instrument or not, may maintain in his own name any action thereon which he might maintain in case it had been made with him only[.]" Va. Code Ann. § 55-22. In order to maintain such action, the third party need not be named in the contract but must show that "the contracting parties clearly and definitely intended to confer a benefit upon him." Fireguard Corp., 455 S.E.2d at 232. Moreover, in Virginia, there is an implied warranty in every construction contract that the work will be performed in a "reasonably good and workmanlike manner and when completed shall be reasonably fit for the intended purpose." Mann v. Clowser, 59 S.E.2d 78, 84 (Va. 1950).

In this case, Allstate argues that Hillel was the third party beneficiary to the contract between Structures and PJ Little. The court is constrained to agree. The subcontract provides that "[a]ll work covered by the Subcontract done at a Project site ... shall be at the risk of the Subcontractor alone." Def.'s Reply to Pl.'s Memo. In Opp. to Mot. to Dismiss Ex. 1, Docket No. 39-1 § 11.2. In addition, PJ Little also agreed to indemnify both Structures and the "Owner" from any and all liability, costs, expenses, attorney's fees, and damages that may result from having to pay certain liens, taxes, fees, wages, and other costs related to PJ Little's work. Id. § 11.1. In the subcontract, the "Owner" is defined as "any Person or its Affiliate and their assigns that engages the Contractor for a Project." Id. § 1.5. The court believes that the contract is unambiguous in that the owner of the Property was intended to benefit from the agreement through this indemnification clause. See Fireguard Corp., 455 S.E.2d at 232 (finding that the contracting parties "clearly and definitely intended to confer a benefit upon the 'Owner' of the project" based on the indemnification clause). The court also finds that Hillel is indisputably the "Owner" under the subcontract, as the party who engaged Structures for the project, and that the contract does not identify any other entity as the "Owner." Finally, the Fourth Circuit has found

10

that in a situation where "a property owner retains a contractor to complete a project, and the contractor hires subcontractors to assist in performing the contractor's work ... the sole intended beneficiaries of such contract are the property owner and the contractor." BIS Computer Solutions, Inc. v. City of Richmond, 122 F. App'x 608, 612 (4th Cir. 2005).

In its reply brief, PJ Little argues that § 11.2 of the subcontract is invalid under Virginia law, and, thus, Hillel cannot be a third party beneficiary by virtue of that language. Virginia law provides that, in any contract relating to the construction of a building, a provision "by which the contractor performing such work purports to indemnify or hold harmless another party to the contract against liability for damages arising out of bodily injury to persons or damage to property suffered in the course of performance of the contract, caused by or resulting solely from the negligence of such other party" is void and unenforceable. Va. Code Ann. § 11-4.1. This statute is an exception to the general public policy of Virginia, which allows parties broad freedom to contract. RSC Equip. Rental, Inc. v. Cincinnati Ins. Co., 54 F. Supp. 3d 480, 485 (W.D. Va. 2014). As such, it must be construed narrowly. Id. However, "the unambiguous language of Code § 11-4.1 requires [the Court] to look to the contract containing the provision, not the circumstances from which the claim for indemnification arose, to determine whether an indemnification provision violates Code § 11-4.1." Uniwest Constr., Inc. v. Amtech Elevator Servs., Inc., 699 S.E.2d 223, 230 (Va. 2010)

In the instant case, it is indisputable that the subcontract between Structures and PJ Little related to the construction of a building. The disputed language in the subcontract provides that the "Subcontractor agrees to save, indemnify and hold Contractor harmless against any and all liability, claims, judgments, or demands, ... including losses arising from indemnitee's own negligence, active or passive[.]" Def.'s Reply to Pl.'s Memo. In Opp. to Mot. to Dismiss Ex. 1,

Docket No. 39-1 § 11.2. The court believes that the plain language in this provision clearly requires PJ Little to indemnify Structures, even for claims arising solely from Structures' own negligence. Because Virginia law "voids any provision that reaches damage caused by the negligence of the indemnitee, even if the damage does not result solely from the negligence of the indemnitee[,]" the court concludes that this language in the subcontract conflicts with the public policy expressed in § 11-4.1 and is void. Uniwest Const., Inc., 669 S.E.2d at 230.

Even though the court concludes that this provision in the indemnification clause is void under Virginia law, the court still finds that Allstate has provided sufficient facts to show that it is an intended beneficiary of the subcontract based on other, valid provisions of the agreement. For example, the court notes that § 11.1 of the subcontract provides that PJ Little will indemnify the "Owner" for certain fees and costs that relate to its work. As such, the court believes that Allstate, as subrogee of Hillel, has sufficiently pled that it was an intended third party beneficiary of the subcontract, so as to withstand a motion to dismiss. In sum, the court concludes that Allstate has sufficiently stated a claim for breach of an implied warranty found in all construction contracts in Virginia.[2] See Wal-Mart Stores, Inc. v. J.A. Fielden Co., Inc., 440 F. Supp. 2d 523, 527-28 (W.D. Va. 2006) (denying motion to dismiss claim of breach of implied warranty because there was sufficient information in the complaint to show that plaintiff was a third party beneficiary, and Virginia law recognizes an implied warranty in the context of construction contracts). Therefore, PJ Little's motion to dismiss will be granted for PJ Little's

---

[2] To the extent that Allstate asserts a claim of breach of express warranty under Count V, the court finds that Allstate failed to identify in its complaint any express warranty that PJ Little allegedly made to Hillel. Therefore, the court concludes that the complaint does not contain sufficient facts to support a claim of breach of express warranty and will grant PJ Little's motion with respect to the claim of express warranty. Accordingly, Count V may only proceed as a claim for breach of an implied warranty.

claim of breach of express warranty but will be denied for its claim of breach of an implied warranty. Accordingly, Count V may only proceed as a claim for breach of an implied warranty.

## II. CMC Supply's Motion to Dismiss

CMC Supply moves for dismissal of PJ Little's claims against it because (1) the third-party complaint fails to state a claim for derivative liability, and (2) its inclusion in the case will not promote judicial economy and will prejudice the existing parties.

Rule 14 of the Federal Rules of Civil Procedure allows a defending party to implead a third party "who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). However, under this rule, "a third-party defendant may not be impleaded merely because he may be liable to the plaintiff." Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365 368 n.3 (1978) (emphasis in original). As such, "[d]erivative liability is central to the operation of Rule 14," and the rule may not be used to bring in matters that merely have "some relationship to the original action." Watergate Landmark Condo. Unit Owners' Ass'n v. Wiss, Janey, Elstner Assocs., Inc., 117 F.R.D. 576 (E.D. Va. 1987); see also E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc., 688 F. Supp. 2d 443, 464 (E.D. Va. 2009) ("It is not sufficient that the third-party claim is a related claim."). In other words, a third-party complaint is only appropriate in cases "where a proposed third-party plaintiff says, in effect, 'If I am liable to plaintiff, then my liability is only technical or secondary or partial, and the third-party defendant is derivatively liable and must reimburse me for all or part ... of anything I must pay plaintiff.'" Id. at 578. "The court is afforded broad discretion to dismiss a third-party complaint filed under Rule 14(a)." United States v. Savoy Senior Housing Corp., No. 6:06CV031, 2008 WL 631161, at *1 (W.D. Va. Mar. 6, 2008).

In this case, CMC Supply contends that PJ Little's third-party complaint fails to establish derivative liability in order to satisfy Rule 14. Specifically, it notes that the third party complaint simply contends that CMC Supply is liable to Hillel for its damages because it manufactured an allegedly defective connector. In the third party complaint, PJ Little asserts that "CMC Supply sold the [connector] to PJ Little," and that the connector had a "defect that was not discoverable by reasonable inspection." Third-Party Compl. ¶ 10. Moreover, PJ Little argues that "the [connector] failed on or about June 17, 2013 causing water damage for which Allstate and Structures seek recovery of at least $183,261.97 from PJ Little." Id. ¶ 11. Finally, PJ Little contends that "[a] merchantable, conforming ... [connector] would not have failed under the same circumstances." Id. ¶ 12. As such, PJ Little urges that, if it is liable to any party for damages resulting from its use of the connector, such damages were proximately caused by CMC Supply's sale of a defective connector.

The court believes that the third-party complaint is inappropriate under Rule 14 because "the acts which are involved in the main claim are separate and distinct from the acts alleged to [have] given rise to the third party claim." Watergate, 117 F.R.D. at 579. In the complaint, Allstate claims that the incident "was the result of defendants' improper selection, use and application of the Connector." Compl. ¶ 14. Specifically, Allstate's theory of the case is that either Structures or PJ Little is liable for installing a connector that was not equipped to handle the high temperatures in the hot water system. Allstate does not allege in the complaint that the connector itself was defective. Although PJ Little does not explicitly allege in its third-party complaint that CMC Supply is solely liable to Allstate, it does argue that CMC Supply's sale of the defective connector proximately caused the damages to the Property. This is a variant of the "it's him, not me" argument because, if PJ Little's claims are taken as true, then PJ Little would

14

be wholly or partly excused from the claims asserted by Allstate. Kohl's Dep't Stores, Inc. v. Target Stores, Inc., 214 F.R.D. 406, 413 (E.D. Va. 2003) (dismissing third-party complaint where the third-party plaintiff alleged that the third-party defendant's actions "caused at least part, and perhaps all, of the damage"). The court believes that this allegation involves a question of whether CMC Supply is liable to Allstate because the claims in the complaint and the third-party complaint are factually distinct. See E.I. DuPont de Nemours & Co., 688 F. Supp. 2d at 463 (dismissing third-party complaint because the third-party plaintiff "has [pled] an entirely different factual predicate from that which was asserted in the original Complaint"). In addition, PJ Little's claim against CMC Supply is not dependent on Allstate's claim against PJ Little, as both claims are inconsistent. See Watergate, 117 F.R.D. at 577 (finding that the third-party complaint, which contained a claim for negligence, was improper as negligence was not alleged in the complaint's main claim, and, therefore, such claim was independent of the outcome of the main claim). In other words, if Allstate succeeds in proving that PJ Little failed to properly install the connector in the hot water system, such claim does little to support PJ Little's claim against CMC Supply that the connector was defective. Finally, PJ Little has not shown in the third-party complaint that the parties were "joint tortfeasors" or that it has a "right to indemnity or contribution" from CMC Supply if were held liable to Allstate. Robbins v. Yamaha Motor Corp., U.S.A., 98 F.R.D. 36, 37 (M.D. Pa. 1983). Therefore, the court believes that PJ Little's claim against CMC Supply is not derivative of Allstate's claims against PJ Little in the complaint.[3]

---

[3] PJ Little alleges, however, that discovery may reveal that the defective connector was the sole cause of the damage to the Property. The court concludes that this argument does not save the third-party complaint as it still fails to show derivative liability. See Watergate, 117 F.R.D. at 578 (dismissing third-party complaint even though "further factual development may suggest that the [third-party defendant's] repair work, as [the third-party plaintiff] alleges, was the sole cause of the problem").

15

Allstate chose to phrase the dispositive question for this case as whether the connector was properly installed or selected, not whether it was properly manufactured. See Compl. ¶ 14 ("The incident was the result of defendants' improper selection, use and application of the [c]onnector."). Consequently, the court also finds that judicial economy and fairness are maximized by dismissing the third-party complaint. See Johnson v. M.I. Windows & Doors, Inc., No. 2:11-CV-0167, 2012 WL 1015798, at *4 (D.S.C. Mar. 23, 2012) (finding that severing the main complaint from the third-party complaint was proper under Rule 14 and served judicial economy as the parties envisioned impleading numerous third-party defendants). Accordingly, PJ Little's third-party complaint against CMC Supply will be dismissed.

### Conclusion

For the foregoing reasons, PJ Little's motion to dismiss will be granted in part and denied in part. For Count IV, the motion will be granted with respect to damages arising from harm to the Property itself but will be denied as to damages arising from harm to personal property stored within the Property. For Count V, the motion will be granted with respect to Allstate's breach of express warranty claim but denied to the extent that Allstate pursues its claim under the theory of breach of implied warranty. If Allstate wishes to pursue a claim of breach of an express warranty, it may seek leave to amend its complaint should the circumstances warrant. Finally, CMC Supply's motion to dismiss will be granted. As such, PJ Little's third-party complaint will be dismissed, and CMC Supply will be stricken as a party in this case.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 17th day of March, 2016.

*/s/ Carroll*

Chief United States District Judge